**FILED**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

AUG 2 7 2020

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES OF AMERICA

v.

MELISSA TURASKY

Case No.: 20CR 560

Violations: Title 18, United States Code, Sections 1014 and 1344

20CR 560
JUDGE SEEGER
MAGISTRATE JUDGE HARJANI

## COUNT ONE

The SPECIAL MAY 2019 GRAND JURY charges:

1.  At times material to this indictment:

    a.  Bank A was a financial institution, the deposits of which were insured by the Federal Deposit Insurance Corporation.

    b.  Gifford's Bar and Restaurant ("Gifford's") was a Limited Liability Company doing business as Gifford's Kitchen and Social, a restaurant located in Elgin, Illinois.

    c.  MELISSA TURASKY was the owner of Gifford's.

    d.  As of in or around early March 2020, Gifford's was no longer operational. On or about March 2, 2020, Gifford's was evicted from its restaurant rental space and had vacated the property. By in or around the end of March 2020, all of Gifford's employees had been terminated.

    e.  The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by

the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program called the Paycheck Protection Program ("PPP"). In or around April 2020, Congress authorized over $320 billion in additional funding for PPP loans.

    f. In order to obtain a PPP loan, a business submitted a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications regarding its eligibility. In the application, the small business's authorized representative was required to provide, among other things, the business's average monthly payroll expenses and number of employees. These figures were used to calculate the business's eligibility and the amount of money it could receive under the PPP. In addition, businesses applying for a PPP loan were required to provide documentation showing their payroll expenses.

    g. PPP loan proceeds were required to be used by the business for certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven by the Small Business Administration if the business spent the loan proceeds on these items within a designated period of time and used at least a certain percentage of the PPP loan for payroll expenses.

h. To gain access to funds through the PPP, small businesses applied through financial institutions participating in the PPP and received the loans directly from those financial institutions as the lender.

i. Participating financial institutions required applicants for PPP loans to provide truthful information, including truthful information about the business's operating expenses and how the PPP loan would be used, which information was material to lenders' approval, terms, and funding of loans.

2. Beginning in or around April 2020, and continuing until in or around June 2020, in the Northern District of Illinois, Eastern Division, and elsewhere,

MELISSA TURASKY,

defendant herein, participated in a scheme to defraud a financial institution, namely, Bank A, the deposits of which were insured by the Federal Deposit Insurance Corporation, and to obtain money and funds owned by and under the custody and control of Bank A by means of materially false and fraudulent pretenses, representations, and promises, as further described below.

3. It was part of the scheme that defendant TURASKY applied for and obtained hundreds of thousands of dollars in PPP funds for Gifford's by submitting and causing to be submitted to Bank A a false and fraudulent loan application and related documents.

4. It was part of the scheme that, on or about April 10, 2020, TURASKY, in her capacity as authorized representative of Gifford's, applied for a PPP loan in the amount of $176,822 from Bank A.

5. It was further part of the scheme that, on the PPP loan application, TURASKY knowingly provided false information about Gifford's to Bank A to make it falsely appear that Gifford's was still open and operating.

6. It was further part of the scheme that, in order to obtain a loan from Bank A, TURASKY represented to Bank A on the PPP loan application that the PPP loan was necessary to support the "ongoing operations" of the business. TURASKY knew at the time that Gifford's had closed and had no "ongoing operations."

7. It was further part of the scheme that, in order to obtain a loan from Bank A, TURASKY represented on the loan application that the PPP loan would be used to "retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments." TURASKY knew at the time that Gifford's had been evicted from the restaurant space, all Gifford's employees had been terminated, and Gifford's would not use the PPP funds for these expenses.

8. It was further part of the scheme that, in order to obtain a loan from Bank A, TURASKY fraudulently provided figures approximating Gifford's monthly payroll and other business expenses, to make it falsely appear that Gifford's continued to have payroll and business operating expenses.

9. It was further part of the scheme that, through the submission of the false and fraudulent PPP loan application, TURASKY caused Bank A to disburse a PPP loan of $176,822 on or about May 1, 2020 into a bank account that defendant and her husband, Individual A, maintained at Bank A in the name of Gifford's Bar

and Restaurant LLC, and of which defendant was a signatory. TURASKY knew at the time that neither she nor Gifford's was entitled to the PPP loan funds.

10. It was further part of the scheme that TURASKY used some of the PPP funds to make payments on a credit card in her name.

11. It was further part of the scheme that TURASKY misrepresented, concealed, and hid and caused to be misrepresented, concealed, and hidden, certain material facts, including the acts and purposes of the acts done in furtherance of the scheme.

12. On or about April 10, 2020, in the Northern District of Illinois, Eastern Division, and elsewhere,

MELISSA TURASKY,

defendant herein, knowingly executed and attempted to execute the scheme to defraud by causing Bank A, a financial institution, to fund a Paycheck Protection Program loan in the amount of approximately $176,822;

In violation of Title 18, United States Code, Section 1344.

## COUNT TWO

The SPECIAL MAY 2019 GRAND JURY further charges:

1. Paragraph 1 of Count One is incorporated here.

2. On or about April 10, 2020, in the Northern District of Illinois, Eastern Division, and elsewhere,

MELISSA TURAKSY,

defendant herein, knowingly caused false statements to be made to Bank A, the deposits of which were insured by the Federal Deposit Insurance Corporation, with the intent to influence the actions of Bank A concerning a Paycheck Protection Program loan application, in that defendant stated:

(a) the loan was necessary to support the "ongoing operations" of Gifford's; and
(b) the loan funds would be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments;

when defendant knew that such statements were false;

In violation of Title 18, United States Code, Section 1014.

## FORFEITURE ALLEGATION

The SPECIAL MAY 2019 GRAND JURY further alleges:

1. Upon conviction of an offense in violation of Title 18, United States Code, Sections 1014 and 1344, as set forth in this Indictment,

MELISSA TURASKY,

defendant herein, shall forfeit to the United States of America any property which constitutes and is derived from proceeds obtained directly and indirectly as a result of the offense, as provided in Title 18, United States Code, Section 982(a)(2)(A).

2. The property to be forfeited includes, but is not limited to, a personal money judgment in the amount of approximately $176,822.

3. If any of the property described above, as a result of any act or omission by a defendant: cannot be located upon the exercise of due diligence, has been transferred or sold to, or deposited with, a third party, has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property, as provided in Title 21, United States Code, Section 853(p).

A TRUE BILL:

_____

FOREPERSON

_____

signed by Matthew F. Madden on behalf of the
UNITED STATES ATTORNEY